GABRIEL GONZÁLEZ OCASIO Y OTROS, demandantes y recurridos, *v.* MUNICIPIO DE LOÍZA Y OTROS, demandados y recurrentes.

*Número:* R-69-289      *Resuelto:* 7 de enero de 1975

*Gilberto Gierbolini, Procurador General, Américo Serra, Procurador General Auxiliar,* abogados de los recurrentes; *M. Orraca Torres* y *Elfrén R. Bernier,* abogados de los recurridos.

### SENTENCIA

Un menor de cuatro años de edad falleció como consecuencia de una reacción anafiláctica provocada al administrársele una prueba de antitoxina tetánica en el Hospital del Municipio de Loíza. El tribunal de instancia impuso responsabilidad al Municipio al concluir, entre otros elementos de negligencia, que el enfermero auxiliar que administró la prueba incurrió en negligencia. En su consecuencia, condenó al Municipio a pagar la cantidad de $25,000 a cada uno de los padres del menor más $175.00 por gastos de funeral, $5,000 en concepto de honorarios de abogado y las costas.

El Municipio de Loíza nos pide la revocación de la sentencia aduciendo 12 errores, de los cuales los primeros ocho van dirigidos a impugnar la apreciación de la prueba en lo que respecta a la negligencia; refiriéndose los errores noveno y

décimo a hechos que no alteran en forma alguna el resultado del caso; y, el undécimo y duodécimo a cuestionar por excesiva la compensación adjudicada y la imposición de honorarios de abogado y costas del pleito.

Surge de la prueba que un perro mordió en el labio superior al menor. Sus padres lo llevaron al Hospital Municipal para que le suministraran atención médica. El Dr. William Cruz Pumarejo lo atendió y le recetó una dosis de 400,000 unidades de penicilina por tres días consecutivos y una dosis de 1,500 unidades de antitoxina tetánica, luego de que se le hiciera debidamente una prueba cutánea negativa. Ese mismo día se le inyectó la primera dosis de penicilina. El próximo día volvió el menor acompañado de su señora madre, quien entregó al enfermero auxiliar la prescripción del Dr. Cruz Pumarejo. Sin supervisión alguna del médico ni de la enfermera graduada, como era la práctica establecida en el hospital, Rosa administró la prueba de antitoxina tetánica en forma subcutánea en vez de cutánea. Minutos después el menor empezó a sentirse mal y, a pesar de los esfuerzos del Dr. Cruz Pumarejo, falleció, como ya dijimos, a consecuencia de una reacción anafiláctica.

El propio Dr. Cruz Pumarejo atestó que había prohibido "que se pusieran inyecciones no estando el médico presente, verdad, precisamente, en evitación de una cosa como ésta, que sucedió no estando el médico presente." (Pág. 14 Deposición del Dr. Cruz Pumarejo, admitida en evidencia por estipulación de las partes.) El Dr. Joseph Aponte, perito de los recurridos puntualizó el carácter peligroso de esta prueba y la necesidad de observar sumo cuidado en su administración: "La prueba intradermal para el suero antitetánico, derivado de caballo que es una prueba peligrosa, en mi opinión, la debe hacer el médico, o quizás una enfermera graduada bajo la supervisión del médico, y la debe leer el médico." (T.E. pág. 25.)

Los peritos de ambas partes estuvieron de acuerdo en que la prueba de la antitoxina tetánica fue la causa principal de la reacción anafiláctica, considerando la inyección de la penicilina como causa no probable. (Véanse págs. 22 y 23 testimonio del Dr. Joseph Aponte perito del recurrido y pág. 63 testimonio del Dr. Fernando Machuca perito de los recurrentes.)

Consideramos que estos hechos son suficientes para imponer responsabilidad al Municipio. En vista de esta conclusión, es innecesario considerar la impugnación de otras conclusiones de hecho, en las que aun teniendo razón el recurrente, no alteraría el resultado del caso.

Con respecto a la compensación concedida a los padres del menor fallecido las partes estipularon que los padres del menor no eran casados ni vivían juntos en el momento de ocurrir los hechos, y, que sufrieron las angustias y sufrimientos que normalmente sufren los padres por la pérdida de un hijo varón de cuatro años. Consideramos excesiva la cuantía de $25,000 para cada uno de los padres por lo que debe reducirse la misma a la cantidad de $10,000. Igualmente debe reducirse la cuantía de honorarios de abogado a la cantidad de $2,500.

A tenor con lo anterior se modifica la sentencia recurrida a los fines de reducir la cuantía concedida a cada uno de los padres a la cantidad de $10,000 para cada uno y a $2,500 la cuantía concedida por concepto de honorarios de abogado más las costas.

Así modificada se confirma.

Así lo pronunció y manda el Tribunal y certifica el Señor Secretario. El Juez Asociado Señor Cadilla Ginorio concurre en voto separado. El Juez Asociado Señor Irizarry Yunqué, no intervino.

(Fdo.) Angel G. Hermida
*Secretario*

—O—

Voto particular del Juez Asociado Señor Cadilla Ginorio.

San Juan, Puerto Rico, a 7 de enero de 1975

Estoy conforme con la sentencia dictada por el Tribunal en el presente caso, excepto en cuanto a la reducción de las cuantías concedidas por el tribunal de instancia de $25,000.00 para cada uno de los padres, por angustias y sufrimientos morales, más $5,000.00 por concepto de honorarios de abogado.

Aunque los padres no fueran casados ni vivieran juntos en la fecha de los hechos, y aunque las partes estipularan que sufrieron las angustias y sufrimientos que normalmente sufren los padres por la pérdida de un hijo varón de cuatro años, no creo que esto sea argumento válido para evaluar los sufrimientos de los padres solamente en $10,000.00 para cada uno, sobre todo concurriendo la negligencia crasa que la prueba demuestra que ocurrió en este caso. Es cierto que la vida de un hijo no se puede pagar con dinero, pero los tribunales tienen la obligación de fijar una indemnización razonablemente justa; y no creo que lo sea la suma de $10,000.00 para cada uno de los padres. Considero que debe mantenerse la cuantía fijada por el tribunal de instancia; más los $5,000.00 concedidos por honorarios de abogado.